UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America        :
                                :
        v.                      :        File No. 1:02-CR-47
                                :
Dale Avery                      :

<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>
(Paper 46)

Petitioner Dale Avery has filed a motion to vacate, set aside, or correct his sentence pursuant to the provisions of 28 U.S.C. § 2255.  (Paper 46).  In his motion, Avery alleges that he is entitled to re-sentencing because (1) his sentence was enhanced by facts that were not found by a jury, (2) his trial counsel was ineffective, and (3) the Court failed to properly advise him of his right to appeal.  The government has opposed Avery's motion, and has included an affidavit of Avery's trial counsel. (Paper 37).  In response to the government's opposition, Avery has submitted a "reply" in which he adds several new claims, including allegations that the government has violated his plea agreement, and that his criminal history points were miscalculated.  For the reasons set forth below, I recommend that Avery's § 2255 motion be DENIED.

Factual Background

On April 18, 2002, a grand jury returned a three-count indictment against Avery.  The first count charged him with possession with intent to distribute cocaine and heroin.  Count Two charged him with possession of cocaine with intent to distribute.  Count Three charged him with using a motor home as a base for distributing cocaine and heroin.  On June 2, 2003, Avery entered a plea of guilty to Count One of the indictment.

At sentencing, the Court concluded that the base offense level for Avery's crime was 25.  The Court also found that Avery was a career offender, subjecting him to a base offense level of 34.  As a result, the Guideline imprisonment range was 188 to 235 months.  The statutory maximum penalty for Avery's offense was 30 years.

The government moved for a downward departure, requesting that Avery not be sentenced as a career offender and recommending a sentence of 110 months.  The government also presented a witness to show that Avery possessed a firearm during the course of his drug-trafficking.  At the conclusion of the sentencing hearing, the Court imposed a two-level enhancement for

2

firearm possession, and agreed not to sentence Avery as a career offender.  The Court ultimately sentenced Avery to 110 months in prison, followed by six years of supervised release.  The remaining counts of the indictment were dismissed on the government's motion.

Avery now claims that he is entitled to re-sentencing.  His first claim is that the gun possession allegation was an "uncharged, unproven offense," and that making this charge a part of his sentencing violated his Sixth Amendment rights under Blakely v. Washington, 124 S. Ct. 2531 (2004).  Avery also asserts that his sentence exceeded the statutory maximum, thereby violating Apprendi v. New Jersey, 530 U.S. 466 (2000).

Avery next claims that his attorney failed to "put up a defense" against the government's evidence of his gun possession.  His ineffective assistance of counsel claim also includes an allegation that his attorney failed to file a notice of appeal "claiming that it was'nt [sic] his resonsibility [sic] to do so, and never advised petitioner as to how to proceed for filing a timely direct appeal."  Avery's final claim in his initial motion is that the Court did not place him on

notice of his right to appeal.

In response to the government's opposition memorandum, Avery has added additional claims. Again with respect to the gun possession issue, Avery argues that this fact should not have been incorporated into his sentence as it was "not a characteristic of the offense for which the petitioner is convicted" as allegedly required by the sentencing guidelines. Next, Avery claims that the government's motion for an enhancement based upon his possession of a gun violated his plea agreement. Finally, Avery argues that his criminal history points were calculated using convictions that post-dated his offense in this case, and that the guidelines only allow the use of convictions that pre-date the offense in question.

## Discussion

Section 2255 is intended to remedy fundamental defects in a criminal prosecution. See United States v. Addonizio, 442 U.S. 178, 185 (1979). A court may grant relief under § 2255 only for constitutional errors, lack of jurisdiction or an error of law constituting a fundamental defect which inherently results in a complete

4

miscarriage of justice.  See <u>Graziano v. United States</u>, 83 F.3d 587, 590 (2d Cir. 1996).  The Supreme Court has defined a miscarriage of justice as a claim of actual innocence.  See <u>United States v. Olano</u>, 507 U.S. 725, 736 (1993).  Absent exceptional circumstances such as a miscarriage of justice, nonconstitutional or nonjurisdictional questions are generally foreclosed to a § 2255 petitioner if not raised on direct appeal.  See <u>Brennan v. United States</u>, 867 F.2d 111, 120 (2d Cir. 1989).

I.  *Blakely* Claim

Avery's first claim is that the Court's two-level enhancement for possession of a dangerous weapon violated his Sixth Amendment right to have such possession determined by a jury.  Both parties agreed at the time of their filings that this claim arose out of the Supreme Court's decision in <u>Blakely</u>.  In its opposition to Avery's motion, the government argued that "absent direction from the United States Supreme Court which extends <u>Blakely</u> to the United States Sentencing Guidelines <u>and</u> makes that ruling retroactive, [Avery's argument is] simply without legal basis."  (Paper 52 at

2) (emphasis in original).

     After the government filed its opposition to Avery's
§ 2255 motion, the Supreme Court issued <u>United States v.
Booker</u>, 124 S. Ct. 738 (2005), which extended the holding
in <u>Blakely</u> to the federal sentencing guidelines.  Courts
in this Circuit, however, have consistently held that
<u>Blakely</u> and <u>Booker</u> are not retroactive.  <u>See</u>, <u>e.g.</u>, <u>Green
v. United States</u>, 397 F.3d 101, 103 (2d Cir. 2005)
("[N]either <u>Booker</u> or <u>Blakely</u> apply retroactively to
[petitioner's] collateral challenge."); <u>Mingo v. United
States</u>, 2005 WL 627637 at *2 (S.D.N.Y. Mar. 17, 2005)
("The Second Circuit has not yet directly addressed the
question of whether <u>Booker</u> applies retroactively on
collateral review to initial section 2255 petitions.
However, every circuit court that has considered the
question has concluded that <u>Booker</u> does not apply
retroactively.") (citations omitted); <u>Woodard v. United
States</u>, 2005 WL 524725 at *2 (E.D.N.Y. Mar. 7, 2005)
(<u>Booker</u> and <u>Blakely</u> do not apply retroactively on
collateral review for first time § 2255 petitions);
<u>Hamdani v. United States</u>, 2005 WL 419727 at *1-2
(E.D.N.Y. Feb. 22, 2005) (<u>Blakely</u> and <u>Booker</u> do not apply

retroactively on initial § 2255 motions).

Avery is challenging a sentence that became final before the rules of <u>Blakely</u> and <u>Booker</u> were announced. Because those rules are not retroactive, Avery's claim that the gun possession allegation needed to be proven to a jury, and that the government failure to do so violated his Sixth Amendment rights under <u>Blakely</u>, should be DENIED.[1]

## II.   <u>Ineffective Assistance of Counsel</u>

Avery makes two separate claims of ineffective assistance of counsel.  First, he alleges that his attorney, Ian Carleton, Esq., presented no defense to the testimony of a government witness on the issue of gun possession.  Second, he claims that his attorney did not file an appeal on his behalf, and failed to counsel him as to the procedural steps for filing an appeal.

"[T]he proper standard for attorney performance is that of reasonably effective assistance."  <u>Strickland v.</u>

_____

[1]   In his initial motion, Avery also claims that his sentence violated <u>Apprendi</u> because he was sentenced beyond the statutory maximum.  This argument is factually incorrect, as Avery received a sentence of 110 months for an offense with a statutory maximum of 30 years.  <u>See</u> 28 U.S.C. § 841.

Washington, 466 U.S. 668, 687 (1984).  The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.  See Kimmelman v. Morrison, 477 U.S. 365, 374 (1986).  Thus, a defendant must establish (1) that counsel made errors so serious that he was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense.  See Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000) (citing Strickland, 466 U.S. at 687-691).

To satisfy the first prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness.  More specifically, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and the deficient performance so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result."  Strickland, 466 U.S. at 687; see also United States v. DiTommaso, 817 F.2d 201,

215 (2d Cir. 1987).  In conducting the ineffective
assistance inquiry, a court must maintain a strong
presumption that counsel's conduct falls within the wide
range of reasonable professional assistance.  See
Strickland, 466 U.S. at 689.  The court should recognize
that counsel is strongly presumed to have rendered
adequate assistance and made all significant decisions in
the exercise of reasonable professional judgment.  See
id. at 690.  In evaluating counsel's performance, the
court is to look to "an objective standard of
reasonableness . . . under prevailing professional norms"
and apply this standard in light of all the circumstances
in the case.  Id. at 688, 690.

In evaluating the prejudice component of Strickland,
a court must determine whether, absent counsel's error,
it is reasonably probable that the outcome of the
proceeding would have been different.  See Mayo v.
Henderson, 13 F.3d 528, 534 (2d Cir. 1994).  A reasonable
probability is a probability sufficient to undermine
confidence in the outcome.  Strickland, 466 U.S. at 703.

With respect to Avery's first claim, the sentencing
transcript shows considerable efforts by defense counsel

to discredit the government's witness on the gun
possession issue.  Specifically, defense counsel's cross-
examination revealed that the witness was a drug user,
and that her drug use left her "somewhere in between"
withdrawal and being "high."  Sentencing Tr. at 11.  The
witness also admitted that she did not know whether the
gun was silver or black.  Id. at 15.  As a result of this
testimony, defense counsel argued to the Court, albeit
unsuccessfully, that the witness's testimony was "vague"
and that she may have been affected by her drug
addiction.  Id. at 23-24.

Even assuming, *arguendo*, that Carleton's performance
at the sentencing hearing was constitutionally deficient,
there is no evidence to suggest that his efforts were
prejudicial.  The government presented a witness who
testified that she saw Avery in possession of a handgun
during a drug transaction.  Carleton was unable to
completely discredit this testimony on cross-examination.
Nonetheless, and again assuming that Carleton's
performance was in some way erroneous, the record does
not suggest a reasonable probability that the outcome
would have been different absent Carleton's efforts.

In response to Avery's claim that his attorney
failed to appeal, the government has provided an
affidavit from Attorney Carleton.  In his affidavit,
Carleton states that while he was representing Avery,
"Mr. Avery never once expressed an interest in appealing
his sentence despite having ample opportunity to do so."
(Paper 52, Ex. 1 at ¶ 2).  Carleton further attests that
had Avery "expressed an interest in appealing, I would
have advised him against taking that course of action in
light of the downward departure he received . . . .   I
would have explained to him that if he were to appeal,
the sentence he could receive upon resentencing could
have been significantly higher."  Id. at ¶ 3.  Finally,
Carleton notes that "[i]n January, 2004, four months
after he was sentenced, Mr. Avery wrote me asking to
appeal his sentence.  I responded in writing on January
19, 2004, and explained to him that it was no longer
possible for me to do so, and that my representation of
him had long since terminated."  Id. at ¶ 4.

Although Carleton's affidavit suggests that Avery
did not request an appeal until several months after his
sentencing, Avery's initial motion is not as clear about

11

the timing of his request to appeal.  The motion merely states that Carleton failed to file a notice of appeal and "never advised petitioner as to how to proceed for filing a timely direct appeal."  (Paper 47 at 2). Construed liberally, Avery's motion alleges that Carleton failed to properly advise him of his right to appeal.

The Supreme Court has held that the <u>Strickland</u> standard applies in cases where counsel allegedly failed to inform a defendant of his right to appeal.  <u>See</u> <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000); <u>Sarroca v. United States</u>, 250 F.3d 785, 787 (2d Cir. 2001).  With respect to the reasonableness of counsel's performance, the Supreme Court determined that counsel must consult with his client about an appeal only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." <u>Flores-Ortega</u>, 528 U.S. at 480.  The Court further held that "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because

12

a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. Even where the defendant pleaded guilty, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea . . . ." Id.

Here, there is little reason to think that a rational defendant would have wanted to appeal. Avery entered a guilty plea, thus limiting the issues on appeal and suggesting that he desired an end to judicial proceedings. Facing a sentence of 188-235 months as a career offender, Avery received a sentence of 110 months. This sentence was at the low end of the applicable guideline range, and in keeping with the terms of his plea agreement. (Paper 35 at 4).

Furthermore, and for reasons set forth elsewhere in this Report and Recommendation, Avery would have lacked any meritorious grounds for appeal. Even had such an appeal been successful and the case been remanded for re-sentencing, the government could have argued for a much higher sentence than the one Avery initially received.

13

The Court should therefore conclude that no rational defendant would have wanted to appeal in this case.

Nor is there reason to believe that Avery "reasonably demonstrated" a desire to appeal. Because Avery has failed to provide any meritorious grounds for appeal, a demonstration of a desire to appeal would not have been reasonable. Moreover, as noted above, Avery gives the Court no reason to believe that he demonstrated his desire to appeal in a timely manner. His § 2255 motion states that Carleton "failed to file a notice of appeal on his behalf claiming that is was'nt [sic] his resonsibility [sic] to do so," and failed to advise him as to how to file a direct appeal. (Paper 47 at 2). By alleging that Carleton refused to take responsibility for filing an appeal, Avery implies that he spoke with counsel about appealing, but does not provide a time frame. Therefore, there is nothing to counter Carleton's statement that Avery's only request for an appeal came four months after the sentencing hearing. See Sarroca, 250 F.3d at 788 (court considered sworn statement of counsel that his client never requested an appeal).

To show prejudice, Avery must demonstrate that

14

"there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Flores-Ortega, 528 U.S. at 484.  Again, evidence of "nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." Id. at 485.  The Supreme Court has recognized that the prejudice analysis "is not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place; specifically, both may be satisfied if the defendant shows nonfrivolous grounds for appeal." Id. at 486.

As previously stated, Avery has failed to present nonfrivolous grounds for appeal.  Therefore, he cannot show prejudice.  Further, while Avery implies in his motion that he requested an appeal, there is no affirmative evidence that his request was "prompt." Indeed, the only direct evidence before the Court on the issue of timing is the Carleton Affidavit, which clearly states that during his representation of Avery, "Mr. Avery never once expressed an interest in appealing his

sentence despite having ample opportunity to do so."
(Paper 52, Ex. 1).  Accordingly, Avery's claim of
ineffective assistance based upon failure to file an
appeal should not succeed under the Strickland standard,
and his claim of ineffective assistance of counsel should
be DENIED.

III.  Court's Notice of Right to Appeal

Avery further claims in his initial motion that the
Court failed to apprise him of his right to appeal as
required by Fed. R. Crim. P. 32.  The sentencing
transcript again belies this claim.  At sentencing, the
Court clearly notified the parties of their right "to
appeal this sentence as set forth in Title 18, US Code,
Section 3742."  Sentencing Tr. at 29.  The Court further
informed Avery that if he "so requests, the Clerk of the
Court shall prepare and file forthwith a notice of appeal
on behalf of the defendant.  Notice of Appeal by the
defendant must be filed within 10 days of the date
judgment is entered on the docket . . . ."  Id. at 29-30.
Accordingly, Avery's claim that he was not properly
notified by the Court of his right to appeal should also
be DENIED.

16

IV.  <u>Remaining Claims</u>

After the government submitted its opposition to his § 2255 motion, Avery filed a reply memorandum.  (Paper 53).  In his reply, Avery does not directly address the government's arguments.  Nor does Avery challenge the statements of fact in Attorney Carleton's affidavit.  Instead, Avery's reply memorandum sets forth several supplemental claims in support of his § 2255 motion.

Among Avery's latest claims is his assertion that the gun possession enhancement was erroneous because it was not "relevant conduct" or "a characteristic of the offense for which the petitioner is convicted" as allegedly required under the sentencing guidelines. (Paper 53 at 4).  The first flaw with this argument is that it was never raised on direct appeal.[2]  A § 2255 petition is not intended as a substitute for a direct appeal.  <u>See Marone v. United States</u>, 10 F.3d 65, 67 (2d

---

[2]  In fact, none of the claims in Avery's § 2255 motion were raised on direct appeal.  His <u>Blakely</u> claim, however, could not have been raised on direct appeal, as <u>Blakely</u> had not been decided at that time.  Also, ineffective assistance of counsel claims need not be raised on direct appeal.  <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003).  Therefore, the Court raises this issue for the first time with respect to Avery's supplemental claims.

Cir. 1993).  Claims not raised on direct appeal are precluded from § 2255 review unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting therefrom.  See Campino v. United States, 968 F.2d 187, 189-90 (2d Cir. 1992).  As to the question of what constitutes sufficient "cause" to overcome this bar, "[t]he Supreme Court has stated that "cause" . . . must be something external to the petitioner, something that cannot be fairly attributed to him.'"  Marone, 10 F.3d at 67 (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)).

In this case, the record shows that Avery contacted his attorney four months after his sentencing to inquire, for the first time, about an appeal.  Furthermore, it is plain from the sentencing transcript that Avery was made aware of his right to file an appeal with 10 days of the judgment becoming final.  Consequently, there does not appear to be any "cause" for Avery's failure to file an appeal outside of his own delay in requesting an appeal.

Furthermore, Avery cannot show prejudice, as his claim of sentencing error is without merit.  Avery alleges that because the statute under which he was

18

convicted, 21 U.S.C. § 841, does not reference the
possession of dangerous weapons, enhancement of his
sentence based upon such possession was erroneous.  He
also claims that his gun possession was not "relevant
conduct" under the sentencing guidelines, as it did not
occur "'during the commission of the offense of the
conviction.'"  (Paper 53 at 4); see also U.S.S.G. §
1B1.3(a)(1).

    The sentencing guidelines define relevant conduct,
in part, as "all acts and omissions, committed, aided,
abetted . . . by the defendant."  U.S.S.G. § 1B1.3(a)(1).
Here, the alleged relevant conduct was the trading of a
gun for drugs on or about August 27, 1998.  The drug
offense for which Avery was indicted and ultimately
convicted took place on May 28, 1998.  Had Avery been
charged with the August, 1998 offense, this charge would
have been grouped with the May 28, 1998 offense pursuant
to U.S.S.G. § 3D1.2.  Pursuant to § 1B1.3(2), the fact
that these offenses would have been grouped renders "all
acts and omissions . . . that were part of the same
course of conduct or common scheme or plan as the offense
of conviction" relevant conduct.

At sentencing, the Court concluded that the government had met its burden of "showing that at least during one of these drug transactions that Mr. Avery did possess a dangerous weapon . . . . So it does appear that the specific offense characteristics apply and that the offense level should be increased by two levels." Sentencing Tr. at 19. Although not expressly stated by the Court, its finding clearly implied that the transaction in which he exchanged a gun for drugs was part of the same "course of conduct" for which he had been convicted. Accordingly, the Court properly concluded that an enhancement for possession of a dangerous weapon was warranted.

Avery next argues that his sentence violated his plea agreement. This claim, too, should fail for failure to raise it on direct appeal. With respect to the substance of his claim, Avery argues that the plea agreement barred the government from prosecuting him for any other criminal offenses known to the government at that time, and that the enhancement for gun possession violated that agreement.

In the plea agreement, the government agreed to

recommend a sentence at the low end of the guidelines. (Paper 35 at 4-5). The parties also agreed on Avery's base offense level and criminal history category. Id. at 7. Notwithstanding these agreements, the government reserved the right to "make whatever other sentencing recommendations the United States deems appropriate." Id. at 4. Accordingly, the government's subsequent motion for an increase of two offense levels was in keeping with the parties' agreement. Avery's claim of a breach of the plea agreement is, therefore, without merit.

Avery's final claim is that his criminal history points were calculated using convictions that post-dated his federal offense. The sentencing guidelines, he argues, only allow for the inclusion of pre-offense convictions. The application notes to U.S.S.G. § 4A1.2, however, explain that a "'prior sentence' means a sentence imposed prior to *sentencing* on the instant offense, other than a sentence for conduct that is part of the instant offense." (Emphasis added). Avery claims that the Court improperly counted a felony conviction and three misdemeanors that pre-dated his May, 1998 federal

drug offense.  He does not claim that any of these convictions were "part of the instant offense."  Avery was sentenced in September, 2003.  Therefore, any convictions prior to his sentencing date were appropriate for the Court to consider in determining Avery's criminal history points.

Conclusion

For the reasons set forth above, Avery's motion for re-sentencing, brought pursuant to 28 U.S.C. § 2255, should be DENIED.

Dated at Burlington, in the District of Vermont, this 4th day of April, 2005.


/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).